**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREA HOLIFIELD, individually and for others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NEXUSCW, INC.,<br><br>Defendant. | Case No.: 3:24-cv-00353-RBM-MMP<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**[Doc. 12]** |

Pending before the Court is Plaintiffs Andrea Holifield, Shalom Robertson, and William Johanning's,[1] on behalf of a class of similarly situated employees ("the Hourly Recruiters")[2] (collectively, "Plaintiffs"), motion for conditional certification of a collective

---

[1] Plaintiff Holifield filed notices of consent on behalf of Robertson and Johanning to join this Fair Labor Standards Act ("FLSA") collective action pursuant to 29 U.S.C. § 216(3). (Docs. 3, 16.)

[2] In Plaintiffs' Original Class & Collective Action Complaint ("Complaint"), they explain that the Hourly Recruiters include all hourly recruiters subject to Defendant's overtime approval policy at any time during the past three years ("FLSA Collective Members") and all hourly recruiters in New Jersey subject to NexusCW's overtime approval policy at any time during the last 6 years prior to the filing of the Complaint until final resolution of this action ("New Jersey Class Members"). (Doc. 1 ¶¶ 27, 29–30.)

1

action pursuant to 29 U.S.C. § 216(b) ("Motion"). (Doc. 12-1.) Defendant NexusCW, Inc. ("NexusCW" or "Defendant") filed an opposition to Plaintiffs' Motion ("Opposition"). (Doc. 17.) Plaintiffs filed a reply brief ("Reply"). (Doc. 20.)

In their Motion, Plaintiffs argue this Court should conditionally certify a FLSA nationwide collective action. (Doc. 12-1 at 16–19.)[3] Specifically, Plaintiffs contend they met their burden at this lenient stage in demonstrating the Hourly Recruiters are similarly situated and that NexusCW had a common policy of requiring pre-approval for overtime, assigning Plaintiffs to clients who instruct them to under-report their hours worked, and failing to independently track Plaintiffs' hours worked. (*Id.*) Plaintiffs argue that, if the Court grants conditional certification, nationwide notice to potential opt-in plaintiffs is required as opposed to a subset of the Hourly Recruiters. (*Id.* at 19–21.) With respect to the form and method of notice, Plaintiffs argue the Court should approve their proposed notice because it is fair, neutral, accurate, and informative, as required. (*Id.* at 21–23.) Plaintiffs further contend the 60-day opt-in period in the proposed notice is presumptively reasonable. (*Id.* at 23–24.) Plaintiffs add that the Court should approve sending notice by mail, email, and text and should permit a reminder notice halfway through the notice period. (*Id.* at 24–26.) Lastly, Plaintiffs argue the Court should order NexusCW to disclose the names and contact information of the Hourly Recruiters for notice purposes. (*Id.* at 26–27.)

The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

**I.   BACKGROUND**

**A. Plaintiffs' Complaint**

The factual and legal allegations in Plaintiffs' Complaint that are relevant to resolving Plaintiffs' Motion are summarized in this section.

---

[3] The Court cites the CM/ECF pagination unless otherwise noted.

### 1. Defendant NexusCW

Defendant is a staffing agency that "manage[s] [] contingent workers, including recruiting, payrolling, and HR partnership." (Doc 1. ¶ 45.) Defendant hires recruiters, like Plaintiff Holifield and the other Hourly Recruiters, to staff at its clients across the country. (*Id.* ¶ 46.)

### 2. Plaintiffs

Defendant employed Plaintiff Holifield as one of its Hourly Recruiters in New Jersey from January 9 to June 2, 2023. (*Id.* ¶¶ 2, 17, 48.) All the Hourly Recruiters were paid hourly. (*Id.* ¶¶ 3, 18, 72.) All the Hourly Recruiters were required to report their hours worked to Defendant for approval. (*Id.* ¶ 73.) All the Hourly Recruiters regularly worked more than 40 hours per week, but Defendant did not pay them for all hours worked. (*Id.* ¶¶ 4–5, 74–75.) Defendant only paid the Hourly Recruiters for overtime hours that were pre-approved by its management. (*Id.* ¶¶ 6–7, 23, 40–41, 57, 77.) But Defendant refused to provide the Hourly Recruiters the required pre-approval to work overtime. (*Id.* ¶ 78.) Due to the nature of the recruiting industry, the Hourly Recruiters were routinely forced to work "unapproved" overtime "off the clock" to complete their job duties and assignments and Defendant did not pay them for that time. (*Id.* ¶¶ 8–9, 20, 24, 58, 82.)

Such unapproved overtime hours were a fundamental requirement to the Hourly Recruiters' roles as recruiters for Defendant. (*Id.* ¶¶ 87–90.) Yet Defendant required and instructed the Hourly Recruiters to only record that they worked up to 40 hours on their timesheets or it would not approve their timesheets. (*Id.* ¶¶ 79–80.) If the Hourly Recruiters recorded more than 40 hours on their time sheets, Defendant would reprimand and discipline them. (*Id.* ¶ 81.)

### 3. NexusCW's Knowledge

Defendant knew that the Hourly Recruiters worked "unapproved" overtime "off the clock." (*Id.* ¶ 92.) Defendant knew that it prohibited the Hourly Recruiters from recording that they worked any overtime hours that they had not obtained Defendant's written pre-approval to work and Defendant did not provide such pre-approval. (*Id.* ¶¶ 142–43.) The

3

Hourly Recruiters repeatedly complained to Defendant's management or their supervisors concerning such unapproved overtime without pay and their attempts to obtain Defendant's pre-approval to work overtime were unsuccessful. (*Id.* ¶¶ 93–94, 144, 146.) Defendant knew, should have known, or recklessly disregarded whether it failed to pay the Hourly Recruiters for all hours of compensable work performed. (*Id.* ¶ 150.) Defendant knowingly, willfully, or in reckless disregard carried out its illegal overtime approval policy that deprived the Hourly Recruiters of earned wages and overtime wages for all hours worked. (*Id.* ¶ 155.)

### 4. Causes of Action

#### i. Count One – Failure to Pay Overtime under FLSA (On Behalf of FLSA Collective Members)

Plaintiffs bring this claim on behalf of the FLSA Collective Members. (*Id.* ¶ 157.) Plaintiffs allege Defendant violated, and is violating, the FLSA "by employing non-exempt employees (Holifield and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all the hours they worked after 40 in a workweek, including any 'unapproved' overtime hours they worked 'off the clock.'" (*Id.* ¶ 158.) Because Defendant "knew, or showed reckless disregard for whether, its overtime approval policy violated the FLSA, NexusCW owes these wages for at least the past 3 years." (*Id.* ¶ 161.)

#### ii. Count Two – Failure to Pay Overtime Wages under the New Jersey Wage and Hour Law (On Behalf of New Jersey Class Members)

Plaintiff Holifield brings this claim under the New Jersey Wage and Hour Law ("NJWHL") on behalf of herself and the other New Jersey Class Members. (*Id.* ¶ 165.) Plaintiff Holifield alleges Defendant "violated, and is violating, the NJWHL by employing non-exempt employees (Holifield and the other New Jersey Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek,

including any 'unapproved' overtime hours they worked 'off the clock.'" (*Id.* ¶ 171 (citing N.J.S.A. 34:11-56a4(b).)

### iii. Count Three – Failure to Pay Earned Wages Under the New Jersey Wage Payment Law (On Behalf of New Jersey Class Members)

Holifield brings this claim under the New Jersey Wage Payment Law ("NJWPL") on behalf of herself and the other New Jersey Class Members. (*Id.* ¶ 178.) Holifield alleges Defendant "violated, and is violating, the NJWPL by knowingly failing to pay Holifield and the other Hourly Recruiters the full amount of wages these employees earned (at their agreed rates) for all the hours of work they performed, including any 'unapproved' overtime hours they worked 'off the clock.'" (*Id.* ¶ 186 (citing N.J.S.A. 34:11-4.2).)

## B. Relevant Evidence[4]

### 1. Declaration of Plaintiff Holifield

Attached to Plaintiffs' Motion is a declaration of Holifield. (Doc. 12-2, Declaration of Andrea Holifield ("Holifield Decl."), Dated May 13, 2024.) Holifield was employed by NexusCW in New Jersey as a non-exempt from overtime recruiter at an hourly rate of $37.50 from approximately January to June 2023. (*Id.* ¶ 2.) Holifield "regularly worked more than 40 hours per week during [her] employment with [NexusCW]. [She] typically worked 10-to-12 hours per day for 5-to-6 days per week, or 50-to-72 hours per week on average, during [her] employment with [NexusCW]." (*Id.*) Other NexusCW recruiters worked similar hours and Holifield saw them doing so. (*Id.* ¶ 8.)

To provide its staffing services, NexusCW hires recruiters like Holifield "to screen and place workers into positions with [NexusCW's] clients." (*Id.* ¶ 3.) The recruiters were the "product" NexusCW sold to clients. (*Id.* ¶ 6.) As a recruiter, Holifield's "primary job duties included posting available jobs online, calling and emailing candidates, preparing profiles about these workers, screening candidates' qualifications, preparing candidates for interviews, and placing them in available positions with [NexusCW's] clients. …

---

[4] The Court only summarizes that evidence necessary to resolve Plaintiffs' Motion.

[NexusCW] gave [Holifield] detailed instructions on how to do [her] job." (*Id.* ¶ 4.) Holifield worked with other NexusCW recruiters and learned from discussions that they "had similar job duties and were paid on an hourly rate basis like [Holifield]." (*Id.* ¶ 7.)

NexusCW and/or its client instituted a standard practice of only paying for "approved" overtime hours for recruiters. (*Id.* ¶ 7.) NexusCW's client subjected the recruiters "to its common policy or practice of only paying overtime for 'approved' hours. [NexusCW] described this policy to us as needing advanced written approval from management before we work overtime hours." (*Id.* ¶ 10.) NexusCW and/or its client expects recruiters to record they work 40 hours per week or less, even though they consistently work more than 40 hours per week, and reinforce this practice by disciplining recruiters if they submit timesheets showing too many hours. (*Id.*) For example, Holifield's supervisor at NexusCW's client, SunRun, directly told her not to record more than 40 hours worked in her timesheets regardless of whether she worked more hours. (*Id.*) Based on conversations with coworkers, Holifield is aware NexusCW and/or its client "gives similar instructions to other recruiters to cut down on these employees working 'unapproved' overtime hours." (*Id.*)

Because recruiters are non-exempt employees, NexusCW tracks their hours worked per day and per week. (*Id.* ¶ 3.) NexusCW "knew or should have known" the recruiters were working such long hours "because they tracked [their] hours worked, would receive and/or had access to emails from [them] with timestamps that would tell them the beginning and end of [their] workday, and had access to other internal records showing [their] time-stamped work." (*Id.* ¶ 8.) NexusCW had access anytime it wanted to activity reports from NexusCW's clients "showing the first and last thing [the recruiters] did in a given day, which would inform [NexusCW] how many hours [they] worked and whether [they] worked days on weekends that were not reflected in [their] timesheets." (*Id.*)

NexusCW did not pay recruiters for overtime hours not reflected on their timesheets sent over by NexusCW's client. (*Id.* ¶ 12.) Because NexusCW had a similar "no unapproved overtime" policy to its client, NexusCW "was aware or should have been

aware that its client was forcing [the recruiters] to under-report [their] hours worked." (*Id.*) NexusCW "failed to conduct a proper inquiry into its client's time-reporting policies to make sure they were compliant with the wage laws." (*Id.*)

### 2. Declaration of Plaintiff Robertson

Attached to Plaintiffs' Motion is a declaration of Robertson. (Doc. 12-3, Declaration of Shalom Robertson ("Robertson Decl."), Dated May 9, 2024.) Robertson was employed by NexusCW in Maryland and Texas as a non-exempt from overtime recruiter at an hourly rate of $37.50 to $38.46 from approximately January to July 2023. (*Id.* ¶ 2.) Robertson "regularly worked more than 40 hours per week during [her] employment with [NexusCW]. [She] typically worked 10-to-12 hours per day for 5-to-6 days per week, or 50-to-72 hours per week on average, during [her] employment with [NexusCW]." (*Id.*) Other NexusCW recruiters worked similar hours and Robertson saw them doing so. (*Id.* ¶ 8.)

To provide its staffing services, NexusCW hires recruiters like Robertson "to screen and place workers into positions with [NexusCW's] clients." (*Id.* ¶ 3.) The recruiters were the "product" NexusCW sold to clients. (*Id.* ¶ 6.) As a recruiter, Robertson's "primary job duties included posting available jobs online for [NexusCW's] client, calling and emailing candidates, preparing profiles about these workers, screening candidates' qualifications, preparing candidates for interviews, scheduling their interviews, placing them in available positions with [NexusCW's] clients, and performing onboarding duties in compliance with [NexusCW's] clients' directions." (*Id.* ¶ 4.) Robertson worked with other NexusCW recruiters and learned from discussions that they "had similar job duties and were paid on an hourly rate basis like [Robertson]." (*Id.* ¶ 7.)

As non-exempt employees, NexusCW "tracks [Robertson's] and other recruiters' hours worked per day and per week using timesheets." (*Id.* ¶ 3.) NexusCW "knew or should have known" the recruiters were working such long hours "because they tracked [their] hours worked, would receive and/or had access to emails from [them] with timestamps that would tell them the beginning and end of [their] workday, and had access

to other internal records showing [their] time-stamped work." (*Id.* ¶ 8.) NexusCW had access anytime it wanted to activity reports from NexusCW's clients "showing the first and last thing [the recruiters] did in a given day, which would reflect how many hours [they] worked and whether [they] worked days on weekends that were not reflected in [their] timesheets." (*Id.*)

NexusCW and/or its client instituted standard practice of only paying for "approved" overtime hours for recruiters. (*Id.* ¶ 7.) NexusCW's client subjected the recruiters "to its common policy or practice of only paying overtime for 'approved' hours. [NexusCW] described this policy to [the recruiters] as needing advanced written approval from management before we work overtime hours." (*Id.* ¶ 10.) NexusCW and/or its client expect recruiters to record they work 40 hours per week or less, even though they consistently work more than 40 hours per week, and reinforce this practice by disciplining recruiters if they submit timesheets showing too many hours. (*Id.*) For example, Robertson's supervisor at NexusCW's client, SunRun, directly told her not to record more than 40 hours worked in her timesheets to avoid the "no unapproved overtime" policy. (*Id.*) Based on conversations with coworkers, Robertson is aware NexusCW and/or its client "gives similar instructions to other recruiters to cut down on these employees working 'unapproved' overtime hours." (*Id.*)

NexusCW did not pay recruiters for overtime hours not reflected on their timesheets sent over by NexusCW's client. (*Id.* ¶ 12.) Because NexusCW had a similar "no unapproved overtime" policy to its client, NexusCW "was aware or should have been aware that its client was forcing [the recruiters] to under-report [their] hours worked." (*Id.*) NexusCW "failed to conduct a proper inquiry into its client's time-reporting policies to make sure they were compliant with the wage laws." (*Id.*)

### 3. Plaintiff Holifield's NexusCW Offer Letter

Attached to Plaintiffs' Motion is an offer letter from NexusCW for Holifield to work on a contingent assignment as a recruiter with SunRun. (Doc. 12-6 (Ex. C) at 2.) The offer letter explains Holifield will work as an hourly worker who must "record hours worked via

[NexusCW's] timekeeping system" and her employment is classified as a W-2 worker with the W-2 issued by NexusCW. (*Id.*) The offer letter explains that overtime requires "[a]dvance written approval, obtained from management prior to working overtime. If overtime is worked and you fail to acquire prior approval, disciplinary measures could be taken." (*Id.*)

### 4. End of Employment Letter

Attached to Plaintiffs' motion is a letter from NexusCW explaining that Holifield's "employment with NexusCW has ended as of 06/02/2023. You held the position of Recruiter on assignment with Sunrun from 01/09/2023-06/02/2023." (Doc. 12-7 (Ex. D) at 2.)

### C. Proposed Notice to Potential Collective Action Opt-in Plaintiffs

Attached to Plaintiffs' Motion is a proposed notice and consent form to potential collective action opt-in plaintiffs ("Proposed Notice"). (Doc. 12-8 (Ex. E) at 2–7.) The Proposed Notice is directed to "[a]ll current and former NexusCW recruiters who are paid on an hourly rate basis and were employed by NexusCW at any time from February 23, 2021 through «60 days from mailing»." (*Id.* at 2.) The Proposed Notice explains the FLSA allegations in this case, NexusCW's position, and that the Court has not yet ruled which party will ultimately prevail. (*Id.*)

The Proposed Notice explains what the potential opt-in plaintiff must do to join this lawsuit, and that they can "contact an attorney of [their] choice" in lieu of Plaintiffs' counsel. (*Id.* at 3–4.) The Proposed Notice explains that if the case is not successful, the opt-in plaintiff "will receive nothing" and "will not be responsible for any of the case costs, expenses, or attorneys' fees." (*Id.* at 3.) The Proposed Notice also explains that opt-in plaintiffs "may be selected to answer written questions under oath, provide documents relating to [their] claim, answer questions verbally under oath, and/or testify in court at trial or a hearing." (*Id.*) The Proposed Notice explains that those who decide not to join may lose their rights to recover overtime unless they bring a new, separate case and that federal law prohibits retaliation or blackballing for joining or participating in this case.

(*Id.*)  Lastly, the Proposed Notice explains all consent forms must be received no later than 60 days from the date of mailing, and only covers recovery of back wages for up to three years from the date the consent is filed.  (*Id.* at 4.)

## II.  LEGAL STANDARD

The FLSA "permits employees to bring lawsuits on behalf of 'themselves and other employees similarly situated.'"  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 947 (9th Cir. 2019) (quoting 29 U.S.C. § 216(b)).  In determining whether collective treatment is appropriate, "[f]irst, at or around the pleading stage, plaintiffs will typically move for preliminary certification," which "refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the similarly situated requirement of section 216(b)." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) (quotation marks and citations omitted).[5]  Because no discovery has taken place in this case, the Court's analysis is limited to this first step of preliminary or conditional certification.

"At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence."  *Id.* (citations omitted).  "[A] majority of courts have determined that evidentiary rules should be relaxed at this stage."  *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 275 (N.D. Cal. 2015) (citations omitted).  The level of consideration is "lenient" and is "loosely akin to a plausibility standard, commensurate with the stage of the proceedings."  *Campbell*, 903 F.3d at 1109 (citations omitted).  "A grant of preliminary

---

[5] *See also id.* ("Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery.  The employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point.  The district court will then take a more exacting look at the plaintiffs' allegations and the record.  Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the 'similarly situated' question, and may be combined with cross-motions for summary judgment.") (internal citations omitted).

10

certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.*

"Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. "Significantly, as long as the proposed collective's 'factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.'" *Senne*, 934 F.3d at 948 (quoting *Campbell*, 903 F.3d at 1114).

### III.  DISCUSSION

The Court will discuss (1) whether Plaintiffs are entitled to preliminary or conditional certification of a FLSA collective action and (2), if so, the scope, form, and content of the notice to be sent to prospective opt-in plaintiffs.

**A. Preliminary Certification**

　　**1.  Parties' Arguments**

Plaintiffs argue they have presented sufficient evidence at the preliminary certification stage that the Hourly Recruiters are similarly situated. (Doc. 12-1 at 16–19.) Specifically, Plaintiffs contend their Complaint, declarations, and other documentary evidence show NexusCW had a company-wide unapproved overtime policy, forced the Hourly Recruiters to work more than 40 hours per week for NexusCW's clients, failed to verify the actual amount of work performed by the Hourly Recruiters, and failed to pay the Hourly Recruiters for all hours worked despite such information being readily available to NexusCW upon request. (*Id.* at 17.) Plaintiffs argue these issues are similar issues of fact material to the disposition of all Hourly Recruiters' FLSA claims. (*Id.* at 17–18.) Plaintiffs add that NexusCW's recordkeeping obligations are non-delegable and their delegating the tracking of hours worked to their clients who forced Plaintiffs to underreport their hours to comply with the no unapproved overtime policy is another similar issue of fact. (*Id.* at 18.)

Defendant responds that Plaintiffs' Motion should be denied because Plaintiffs cannot establish NexusCW was their employer and that it was NexusCW's client's policy

11

to not record unapproved overtime hours worked, not NexusCW's. (Doc. 17 at 16–21.) Defendants alternatively request the Court defer ruling on Plaintiffs' Motion until discovery has been conducted as to which entity is Plaintiffs' employer. (*Id.* at 16, 22.) Defendants respond that Plaintiffs' declarations support that NexusCW's client SunRun, not NexusCW, implemented the alleged policy at issue. (*Id.* at 24–27.)

Plaintiffs reply that they have submitted declarations describing their employment relationship with NexusCW and documentary evidence specifying NexusCW as Holifield's employer. (Doc. 20 at 5.) Plaintiffs reply that employer status is an element of their FLSA claim for unpaid overtime, but there has been no discovery, and such a question is a merits challenge not appropriate at this stage. (*Id.* at 5–6.) Plaintiffs also reply that, at this stage, resolving factual disputes and credibility determinations are inappropriate and that courts disregard defendants' counter-assertions of facts and evidence. (*Id.* at 6–7.) Plaintiffs reply that they have presented competent evidence that NexusCW was their employer, that NexusCW implemented a policy resulting in the Hourly Recruiters working unpaid hours, and that NexusCW cannot deflect blame onto its clients because its duties under the FLSA are non-delegable. (*Id.* at 7–8.)

### 2. Analysis

The Court finds that, at this preliminary certification stage, Plaintiffs have presented sufficient evidence that they are similarly situated in that they share "similar issue[s] of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 117; *see also Denham v. Glob. Distribution Servs., Inc.*, Case No. 18cv1495-LAB (MDD), 2020 WL 13468889, at *2 (S.D. Cal. Feb. 25, 2020) (granting preliminary certification where plaintiffs' affidavits alleged employees frequently worked overtime hours without pay, that practice potentially violates the FLSA, and each employee was similarly situated in that they were non-exempt W-2 employees working for defendants in California and Arizona); *Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419-BEN (NLS), 2014 WL 2566144, at *5–6 (S.D. Cal. June 6, 2014) (granting preliminary certification based only on plaintiff's

declaration as well as manuals and job descriptions the plaintiff received while working for the defendant).

In Holifield and Robertson's declarations, they explain they were employed by NexusCW as non-exempt recruiters who regularly worked more than 40 hours per week and saw other NexusCW recruiters doing so who had similar job duties and were paid on an hourly basis. (*See* Holifield Decl. ¶¶ 2, 7–8; Robertson Decl. ¶¶ 2, 7–8.) Holifield and Robertson explain NexusCW or its client instituted a standard practice of only paying for "approved" overtime hours for recruiters. (*See* Holifield Decl. ¶ 7; Robertson Decl. ¶ 7.) Holifield and Robertson explain NexusCW tracked their hours worked per day and per week and had access to emails with timestamps concerning the beginning and end of their workdays and internal records showing their time-stamped work. (*See* Holifield Decl. ¶ 3, 8; Robertson Decl. ¶ 3, 8.) Holifield and Robertson explain NexusCW did not pay recruiters for overtime hours not reflected on their timesheets sent to NexusCW by NexusCW's client. (*See* Holifield Decl. ¶ 12; Robertson Decl. ¶ 12.) Holifield and Robertson explain NexusCW has the same unapproved overtime policy as its client, so it was or should have been aware its client was forcing recruiters to under-report their hours worked or failed to conduct a proper inquiry to ensure its client's time-reporting policies were compliant with wage laws. (*See* Holifield Decl. ¶ 12; Robertson Decl. ¶ 12.)

Plaintiffs also attach Holifield's NexusCW offer letter explaining she was a W-2 worker for NexusCW and would report hours worked on NexusCW's timekeeping system while on contingent assignment with SunRun. (*See* Doc. 12-6 (Ex. C) at 2.) The offer letter also explains NexusCW's overtime policy requiring pre-approval. (*See id.*) Lastly, Plaintiffs attach a letter from NexusCW explaining that Holifield's "employment with NexusCW [sic] ended as of 06/02/2023." (Doc. 12-7 (Ex. D) at 2.)

At this stage, Plaintiffs, the Hourly Recruiters, are similarly situated in that they have several similar issues of law and fact in common that are material to the disposition of their FLSA claim: (1) whether NexusCW was their employer or joint employer, (2) whether they were non-exempt hourly employees, (3) whether they were subject to NexusCW's

13

unapproved overtime policy, (4) whether they worked unapproved hours over 40 hours during a workweek during their employment with NexusCW, (5) whether NexusCW could delegate its time recordkeeping duties to its clients, (6) whether NexusCW failed to verify Plaintiffs' actual hours worked compared to those reported from NexusCW's clients, and (7) whether NexusCW failed to pay Plaintiffs for all actual hours worked.  Questions remain concerning NexusCW's role in Plaintiffs' alleged underreporting of all hours worked as opposed to its clients' roles.  However, at this stage, Plaintiffs have presented sufficient evidence of NexusCW's unapproved overtime policy and ability to verify the actual hours Plaintiffs worked for NexusCW and its clients.  (*See* Holifield Decl. ¶ 3, 8; Robertson Decl. ¶ 3, 8; Doc. 12-6 (Ex. C) at 2.)

Defendant attaches much of its own evidence and appears to raise arguments disputing the merits of Plaintiffs' allegations.  (*See* Doc. 17-1–6.)  The Court declines to consider this evidence and the merits at the preliminary certification stage.  *See Herrera v. EOS IT Mgmt. Sols., Inc.*, Case No. 20-CV-01093-LHK, 2020 WL 7342709, at *8 (N.D. Cal. Dec. 14, 2020) ("Courts in this circuit have routinely granted conditional certification even where Defendants produce competing declarations challenging Plaintiffs' allegations. This is because competing declarations at this stage create a 'he-said-she-said situation,' and therefore although '[i]t may be true that the [defendants'] evidence will later negate [the plaintiffs'] claims,' that should not bar conditional certification at the first stage.") (citations omitted); *Hensley*, 2014 WL 2566144, at *6 ("This Court cannot properly determine whether the employees are sufficiently similarly situated to proceed collectively to trial without a more complete factual record. This Court will not make such a determination based on disputed facts, where the employee-plaintiff has not yet had a chance to obtain fair discovery that is likely needed to respond."); *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *4 (N.D. Cal. 2012) ("Federal courts are in agreement that evidence from the employer is not germane at the first stage of the certification process, which is focused simply on whether notice should be disseminated to potential claimants.") (citations omitted); *Labrie v. UPS Supply Chain Sols., Inc.*, No. C08-

3182 PJH, 2009 WL 723599, at *5–6 (N.D. Cal. Mar. 18, 2009) (granting preliminary certification and finding plaintiffs classified as independent contractors similarly situated with respect to the FLSA violations alleged and finding the defendants' arguments going to the merits "are more appropriately addressed on a motion to decertify or motion for summary judgment once notice has been given, the deadline to opt-in has passed, and discovery is closed.").

Thus, the Court **GRANTS** Plaintiffs' Motion for conditional certification of a FLSA collective action.

### B. Proposed Notice

The Court has reviewed Plaintiffs' Proposed Notice (Doc. 12-8 (Ex. E)) and finds that it is accurate, neutral, fair, and informative. The Court **APPROVES** the Proposed Notice pending the modifications noted below. The Court will discuss the scope of the Proposed Notice and then its form and method below.

"The Supreme Court has held that employees need to receive 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate' in the collective action." *Herrera*, 2020 WL 7342709, at *10 (quoting *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). "In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche Inc.*, 4983 U.S. at 174.

#### 1. Nationwide Notice

Plaintiffs argue the Court should reject Defendant's attempt to limit the Proposed Notice to a subsection of workers because NexusCW has a common unapproved overtime pay policy and attempts to delegate its recordkeeping obligations to its clients. (Doc. 12-1 at 19–21.) Defendant responds Plaintiffs' Proposed Notice is too broad in covering all recruiters paid on an hourly basis as it would include part-time workers who did not work close to 40 hours a week. (Doc. 17 at 27.) Defendant responds the Proposed Notice should

1  be limited to hourly recruiters at SunRun since Plaintiffs Holifield and Robertson only
2  worked for that NexusCW client. (*Id.* at 27–28.) Plaintiffs reply that NexusCW's objection
3  to including all hourly-paid recruiters is an issue of damages, which is premature, and such
4  plaintiffs that cannot prove they worked more than 40 hours in a workweek can be
5  dismissed from the case or on summary judgment. (Doc. 20 at 12.)

6　　At this stage, the Court declines to limit the scope of recipients to those hourly
7  recruiters at NexusCW's client SunRun. *C.f. Fernandez v. Tox Corp.*, 677 F. Supp. 3d
8  1089, 1098 (C.D. Cal. 2023) ("Since *Campbell* was decided, district courts applying its
9  relaxed standard at this stage routinely will grant conditional certification to a nationwide
10  opt-in collective, even when the plaintiff does not have evidence of the challenged policy
11  or practice in every location of the defendant's operations.") (collecting cases).  The Court
12  also declines to limit the scope of recipients to exclude part-time workers because this
13  lawsuit involves alleged *unrecorded* work hours.  *C.f. Costa v. Apple, Inc.*, No. 23-CV-
14  01353-WHO, 2023 WL 8101980, at *4 (N.D. Cal. Nov. 21, 2023) (requiring plaintiffs to
15  modify collective to only those employees who *recorded* more than 40 hours in a
16  workweek between the grant of restricted stock units ("RSUs") at issue and the time the
17  RSUs vested) (emphasis added).

18　　To attempt to fashion a bright line for the notice aimed at excluding part-time hourly
19  workers may unreasonably foreclose the inclusion of hourly workers who allegedly worked
20  *unrecorded* overtime in excess of 40 hours in a workweek, even if they did not *record* a
21  40-hour workweek.  However, Plaintiffs must modify the consent form to limit opt-in
22  plaintiffs to those hourly employees who worked any unrecorded or uncompensated hours
23  over 40 hours in a workweek during the relevant time period.  Additionally, the email and
24  text message notice must be revised to explain recipients "may be" eligible to participate
25  in this collective action.
26  ///
27  ///
28  ///

### 2. Form and Method of Notice

#### i. Parties' Arguments

Plaintiffs argue their Proposed Notice is fair, neutral, accurate, and informative and should be approved by the Court. (Doc. 12-1 at 21–27.) Plaintiffs explain that Defendants may request various warnings to be included, but that those warnings are not necessary because they have a tendency to chill participation. (*Id.* at 22–23.) Plaintiffs contend a 60-day opt-in period is presumptively reasonable. (*Id.* at 23–24.) Plaintiffs argue the Court should approve sending notice to potential opt-in plaintiffs by mail, email, and text and permit a reminder notice halfway through the opt-in period. (*Id.* at 24–26.) Lastly, Plaintiffs request the Court order NexusCW to disclose the names and contact information to Plaintiffs' counsel of all putative collective action members within 15 days of the Court's order. (*Id.* at 26–27.) Specifically, the list "should be in a computer readable format such as Microsoft Excel Spreadsheet (or comparable computer-readable format) and should include each putative collective members' name as well as their last-known mailing addresses, email addresses, telephone numbers, job title(s), location(s) worked, and dates of employment in each relevant job title and each location worked." (*Id.*)

Defendants argue Plaintiffs' requests for personal information such as dates of birth and locations of work is invasive and overbroad. (Doc. 17 at 28.) Defendants argue text message notice is invasive and potentially costly to putative collective members. (*Id.* at 28–29.) Defendants argue the Proposed Notice does not provide a neutral discussion and fails to warn recipients they are not obliged to join the lawsuit, may choose their own counsel, and fails to explain their rights, options, and obligations. (*Id.* at 29.)

Plaintiffs reply that the personal information requested is regularly disclosed at the conditional certification stage because it assists in sending notice and identifying forwarding addresses for returned or undelivered mail. (Doc. 20 at 12–13.) Plaintiffs reply that notice via text message is not invasive or costly and is a ubiquitous form of communication in today's world. (*Id.* at 13–14.) Plaintiffs reply that the Proposed Notice already informs recipients they are not obligated to join and may choose their own counsel,

advises them of discovery obligations, and advises them they will not incur costs because Plaintiffs' counsel has agreed to cover all litigation costs. (*Id.* at 14.)

### ii. Analysis

The Court will address each of the issues Defendant disputes below. The Court finds no issues with the unchallenged portions of Plaintiffs' Proposed Notice except for the two typos noted at the end of this section.

***Birthdates and Locations of Work.*** The Court finds that Plaintiffs' request for Defendant to provide potential opt-in plaintiffs' birth dates and locations worked is appropriate. *See Herrera*, 2020 WL 7342709, at *11 (ordering defendants to produce birthdates for collective action members). Birth dates may prove useful in identifying forwarding addresses for undelivered mail. Additionally, knowing the potential opt-in plaintiffs' locations worked may be particularly important to understanding the scope of the alleged issues concerning the unapproved overtime policy.

***Text Message Notice.*** The Court finds that notice via mail, email, and text message is appropriate and that a reminder notice may go out when 30 days are left in the op-in period. *See Apple, Inc.*, 2023 WL 8101980, at *7 ("[G]iven the ubiquity of text messaging … plaintiffs may distribute notice via mail, email, and text message. They may also send a reminder postcard and reminder text 60 days after the notice is mailed to potential collective action members."); *Cuevas v. ConAm Mgmt. Corp.*, Case No. 18cv1189-GPC(LL), 2019 WL 5320544, at *7 (S.D. Cal. Oct. 21, 2019) ("District courts in this circuit routinely approve reminder notices 30 days prior to the end of the opt-in period.") (collecting cases).

***Neutral Discussion and Warnings.*** Defendant does not explain how Plaintiffs' notice fails to provide a neutral discussion of this case. Upon the Court's review of the Proposed Notice, it describes Plaintiffs' allegations and Defendant's response fairly and the Court's neutral position appropriately. Furthermore, the Proposed Notice already informs recipients they are not obliged to join the lawsuit and that they may choose their own counsel. (Doc. 12-8 (Ex. E) at 3–4.) The Proposed Notice adequately informs

recipients of their rights and obligations, including that they "may be selected to answer written questions under oath, provide documents relating to [their] claim, answer questions verbally under oath, and/or testify in court at trial or a hearing." (*Id.* at 3.) The Proposed Notice also informs recipients that they will not pay all costs associated with the litigation, (*id.* at 3), because Plaintiffs' counsel will pay all such costs. *C.f. Geiger v. Charter Commc'ns, Inc.*, No. CV 18-158-DMG (GJSX), 2019 WL 8105376, at *8 (C.D. Cal. May 13, 2019) ("Courts generally agree, however, that including a statement that opt-in plaintiffs may have to bear Defendants' litigation costs would have the unnecessary effect of chilling participation in the suit.").

*Additional Modifications.*  The Proposed Notice must be changed to eliminate references to "Staffmark" and replace those typos with NexusCW. (Doc. 12-8 at 3, 5.)

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion (Doc. 12) is **GRANTED**. The Court **ORDERS** as follows:

1. Within 5 days of this Order, Plaintiffs shall file a revised Proposed Notice and consent form incorporating the necessary modifications identified in this Order.

2. Within 15 days of this Order, NexusCW shall provide Plaintiffs a list ("Collective Action List") in a computer readable format such as Microsoft Excel Spreadsheet (or comparable computer-readable format). The Collective Action List shall include each putative collective members' name as well as their last-known mailing addresses, email addresses, telephone numbers, date of birth, job title(s), location(s) worked, and dates of employment in each relevant job title and each location worked.

3. Within 7 days of receipt of the Collective Action List from Defendant, Plaintiffs must send the Notice and consent form to all individuals on the collective action list via first-class mail, email, and text message. Potential opt-in plaintiffs shall be permitted to file consent to join forms until 60 days

19

after the mailing of the Notice.  A reminder may be sent halfway through the 60-day notice period.

Additionally, given the parties' dispute concerning Plaintiffs' motion for leave to amend Plaintiffs' Complaint concerns many arguments relating to Plaintiffs' Motion and Defendant's Motion to Change Venue (*See* Docs. 21–23), the parties must file a one-page joint status report **by Friday, August 23, 2024** explaining whether Defendant still opposes Plaintiffs' motion for leave to amend and on which grounds identified in Defendant's opposition (Doc. 22).

**IT IS SO ORDERED**.

DATE:  August 20, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE